Abraham Farrow Father of the Pit. & Deft, being seised of divers Lands by his Will devises them among his Children & after-wards purchases Lands of one Barton which both before & *B262 after he bought it he declared he intended for his Son Abraham (the Pit.) whom he seated upon it And the Pit. has made Improvements The Father in his last Sickness procures a Promise from his eldest Son (the Deft.) [244] to convey this Land to the Pit. And this Bill is brought to compel a Conveiance accordingly
The Promise is confessed by the Deft, but sworn by him to be made upon an Apprehension that his Father had no Will he having declared some few Days before that he had none Only two Papers containing Pieces of Wills Neither of which he liked & would alter them or make a new Will One of these Papers is since established as the Will By which Deft, has a very slender Provision only 750 A. of poor Land & the Reversion of 200 more & not a Penny of the personal Estate appraised to 500;£. whereas Pit. has Lands to 3 Times the Value exclusive of Bartons besides Slaves & other Estate So that Deft, is almost disinherited When the Will -was in Contest Pit. proposed to Deft, to release his Right to the Mann’r Plantation ab’t 200 A. not so valuable as Bartons w’ch is given to Pit. by the Will if Deft, would convey Bartons Land to him This Deft, agreed to But after the Will was established Pit. claimed both & refused to stand to his Agreement For which Reason Deft, not believing it was his Father’s Intention that Pit. should have Bartons Land & the Mann’r Plantation too brought an Ejectm’t in the County Court for Bartons Land & had Judg’t to recover
The Equity set up by the Pit. in Order to have a Conveiance of the Land in Question is founded 1. Upon the Fathers declaring both before & after the Purchase that he designed the Land for the Pit. 2. Upon the Defts. Promise to his Father when sick to convey it I shall consider both these Points abstracted from the' Circumstances appearing in this Case And-see what Effect or Operation they have at Law Then I will enquire how far a Court of Equity will interpose in Cases of this Nature And afterwards consider this Case in all its Circumstances After which I hope it will be no difficult Matter to convince the Court that the Pit. ought not to be relieved
The Fathers Declaration if it can operate at all at Law so as to convey any Estate to the Son must be as a Covenant to stand seised And so it would had it been committed to Writing but being only by Parol it cannot operate as a Cov’t to stand seised which being a Conveiance to Use cannot be good unless put in Writing for no Use can be raised by Parol So is Callard & *B263 Callard 2. Ro. A. 788. Mo. 687. “ The Father being upon the “ Land says to his Son I do here reserving an Estate for my “ own & my Wife’s Life give unto thee & thy Heirs forever “ these my Lands &c.” In this Case it was adjudged that no Use could arise to the Son being by Parol And the like Point is adjudged in 1. Sid. 26. Hore & Dix & [245] 82. Foster & Foster — But this ex abwndanli The Laws of this Country are express that no Estate in Land pass but by Deed So that this Decl. can avail nothing at Law.
Then as to the Defts. Promise to his Father there being no Cons, to induce that Promise it is void in Law. There is no Rule of Law more universally known than Ex nudo pacto non oritur actio I need say no more since the very bringing of this Suit is a Confession that the Pit. is without Remedy at Law
I shall proceed then to consider how far a Court of Equity will relieve in Cases of this Nature And 1. As to the Fathers Decl. This it is sayed sufficiently shews his Intention that the Pit. should have the Land which to be sure cannot be denied But then that Intention I humbly conceive is not suffic’t alone for a Court of Equity to make a Decree upon A Mans Intention to do an Act without the Concurrence of those Forms &c. Circumstances which the Law requires is of no Signification at all As may be illustrated by various Instances If a Man makes a Will & declares an Intention to revoke it but does not actually revoke it This Intention will not amount to a Revocation So if a Man devises his Land by a Nuncupative Will or in England makes a Will in Writing And there is but one Circumstance or Formality required by the Statute of Frauds wanting Or if a Deed be signed & sealed but not delivered In all these Cases the Intention is apparent but yet a Court of Equity will not relieve From these Instances & many others that might be named it is evident that a Mans Intention alone is not a suffic’t Ground or Foundation for a Court of Equity to make a Decree In the Case of Callará & Callará cited supra the Fathers Intention was plain to give the Land to his Son Yet that Intention not being manifested according to the Forms of Law nothing passed Nor do we read that the Son attempted to support this Gift in a Court of Equity Indeed I am yet to learn if there be any Case where a Court of Equity has decreed an Heir to convey meerly upon the Intention of his Ancestor to give the Land to another The Argument is as strong & the Case equally equitable- where the *B264 Ancestor devises Land by Will without Writing that the Heir should be compelled to convey to the Devisee The Intention is sufficiently evident but there never was an Instance of that kind I can venture to affirm
The Case of Clavering a Clavering 2 Vern. 473. is a very strong one to prove that a Mans Intention alone without the Concurrence of those Forms & Ceremonies which the Law for very wise Ends has appointed to the Consummation of every [246] Act is not a suffic’t Reason for a Court of Equity to interpose & interrupt the Course of the Law. The Case was thus “ Sir Ja’s “ Clavering made a Settlem’t in 1684. under which the Deft. “ claimed In 1690. he made another Settlement without any “ Regard to that of 1684. under which the Pit. claimed There “ was no Power of Revocation in the Deed of 1684. but it was “ in Proof that the Deed was not published or delivered out by “ Sir James & was found among his wast Papers at his Death “ That the Deed of 1690. was often mentioned by him as the “ Settlement of that Estate & so indorsed with his own Hands & “ he told the Ten’ts the Pit. was to be their Landlord.” But notwithstanding all these Circumstances to favour the Settlem’t of 1690. & tho’ Sir James’s Intention was very plain & evident Yet no Relief could be had ag’t the Settlement of 1684. In which there being no Power of Sir Ja’s could not resume the Estate whatever his Intention or Inclination might be
There is indeed a very great Difference between Conveiances made to a Purchasor for a valuable Cons. & voluntary Conveiances without any Cons, at all In the first if there be any Defect in Point of Form or Ceremony a Court of Equity will always interpose & compel a perfect Conveiance according to the Agreem’t of the Parties but in the latter Equity scarce ever intermeddles [Except in some special Instances where Cred’rs or younger Children are concerned 2 Vent. 365. Vern. 37, 38. 40.] (a)
They are left to their Operation at Law and valeant quantum valere possunt is the Rule for Equity will not assist them And this Difference is well founded both in Reason & Justice In the Case of a Purchase there is a meritorious Act on the Part of the Purchasor viz. the Paiment of the Cons. And natural Justice requires that he should have a good Title made to him & not lose his Purchase for Want of a meer Ceremony But in the *B265 Case of a voluntary Gift there is no Merit in the Donee. It is from the meer Favour of the Donor that he has any Thing And therefore he must take the Gift as it is for better or worse Equity will not stretch to assist him Especially against an Heir whose Right & Title are favoured both in Law & Equity
Had the Ancestor then in this Case gone much further than he has done Had there been a Deed actually executed but that was imperfect for Want of some Circumstance As if there had been a Feoffment without Livery Even in such Case the Conveiance being voluntary a Court of Equity I conceive would not compel the Heir to perfect it but would leave the same to its Operation at Law Much less then ought this parol Decl. to be assisted ag’t the Heir 2 Ch. Ca. 133, 134. 1 Vern. 37, 38.
I come now to speak to the Defts. Promise made to his Father [247] to convey this Land to the Pit. his Brother without any Regard to the Circumstances attending it This Promise as I have already observed is void in Law being made without any Cons. And I conceive it is void in Equity too At least I can safely say I never yet read or heard of an Instance where a Court of Equity compelled a Performance of a Promise of this sort It is natural Justice that there should be Quid pro quo And where there is not Promises of this kind will fall within the Rule & Reason of voluntary Conveiances. They must operate as they can at Law for they are never assisted in Equity It is indeed a Rule that Equity will not relieve ag’t a Maxim of the Comon Law And it is a Maxim Ex nudo pacto non oritur actio
From what has been sayed I hope it is pretty evident that the Pretences set up by the Pit. to intitle him to a Conveiance of the Land in Controversy from the Deft, have no solid or equitable Foundation taking them in the most favourable Light for the Pit. But when the Circumstances attending this Case are considered which I must now beg Leave to speak to I believe it will appear that there is as little Honesty as Equity on the Pits. Part And extreme Hardships on the Defts. if he shall be compelled to convey this Land
It has been opened that at the Time the Deft, made the Promise to his Father to convey the Land to the Pit. he apprehended there was no Will His Father told him so In the Event it falls out there is a Will by which the Pit. who is a younger Child has more than three times the Estate given him than is given to the Deft, the Heir at Law Is there any Reason or Justice then *B266 that any Thing more should be done for this younger Child & the Heir be quite disinherited tho’ it does not appear he ever offended his Father or gave him any Cause to disinherit him. Was this younger Child unprovided for there might be some Appearance of Equity. But when he is so amply provided for & will at all Events have _a better Estate than the Heir Surely there can be no Reason that a Court of Equity should lend any Assistance to disinherit an Heir under such hard Circumstances & against a constant & established Maxim that the Heir is to be favoured. See 2. Sal. 416.
But after all it is somewhat surprising that a Man should come into Equity to compel the' Performance of a Promise altogether voluntary And at the same Time refuse to perform an Agreem’t on his Part that is really more than voluntary And such an Agreem’t as I conceive a Court of Equity ought to compel the Performance of The Deft, in his Answer swears that when the Will was in Contest the Pit. proposed to him to rel. his Right to the Mann’r Plantation if he would convey Barton’s Land to the [248] Pit. And this was agreed to by the Deft, tho’ the Mann’r Plantation is not near so valuable as Bartons This Agreem't is likewise proved by a Witness who heard the Pit. acknowledge it But see the Justice & Honesty of the Pit. as soon as the Will is established he flys from this Agreem’t refuses to perform it And now he will have Bartons Land & the Mann’r Plantation too It is a Maxim He that will have Equity must do Equity And surely it is equally reasonable & equitable that the Pit. should perform his Agreem’t as that the Deft, should perform his I beg Leave to observe the Justice of the Deft, in this Agreem’t He had all the Reason in the World to believe from what his Father told him that the Will would not be established & then the Mann’r Plantation had'descended to him Yet he is content upon' the Pits, releasing this slender Prospect of a Right to comply with what he took to be his Fathers Intention for he swears he does not believe his Father intended that the Pit. should have Bartons Land & the Mann’r Plantation too Nor is it reasonable to suppose he should intend to leave his Heir who had never disobliged him without a House to put his Head in
It may be objected perhaps that the Pit. when he made this Agreem’t was doubtful of his 'Right to the Mann’r Plant’n That if he had been sure the Will would be established he would not have made it Such an Argument may be a Proof of the *B267 Pits. Cunning but not of his Honesty But to obviate the Force of this Obj. if there is any in it that an Agreem’t founded upon a Mistake that is where a Man thought he had not a Right when he really had is binding in Equity “ A Man seised of Freehold “ Lands in tail with Rem’r to his elder Brother & of Copyhold “ Lands in Fee devises the Freehold Lands to his younger “ Brother & the Copyhold to his elder Brother And the Devisees “ agree that the Lands should be enjoied by them accordingly “ And this Agreem’t was established in Equity Tho’ it appeared “ that the elder Brother thought the Intail of the Freehold “ Lands was docked And the younger Brother to draw on the “ Agreem’t made him believe so when in Truth it was not” 1 Ch. Ca. 84. Prank a Frank
This Case I think is a full Answ’r to any Obj. that may be made that the Pit. when he made this Agreem’t did not know his Right But the Obj. is really ridiculous in this Case & must turn upon the Pit. Since we may likewise object that the Deft, did not know he should lose Mann’r Plantation when he promised to convey Bartons [249] to the Pit- There remains not then in my humble Apprehension the least Pretence why the Pits. Agreem’t should not be enforced as well as the Defts. Promise made under the Circumstances appearing in this Case If the court should be of Opinion that the Pit. ought to be relieved at all
But after putting the Deft, to all the Trouble & Charge he has done and refusing to perform an Agreem’t proposed by himself for settling this Difference between two Brothers And an Agreement that in Equity as I conceive he is bound & compellable to perform I hope the Pit. is intitled to no extraordinary Favour But as it is a Case without Preced’t that ever an Heir has been compelled to perfect a defective voluntary Conveiance or to perform a Promise made without any Consideration & upon a Misapprehension too And the Case in all its Circumstances is extreme hard upon the Deft. I hope the Pit. will have no Relief at all but that his Bill will be dismissed
And upon Hearing in October 1737. the Bill was dismissed by the Opinion of the whole Court

 See 2 Sal. 416.